Is Guerrero Rodriguez v. Garland. Counsel for petitioner, please proceed. May it please the court, Susan Peltier, appointed pro bono counsel for the petitioner, Mr. Guerrero Rodriguez. Counsel, on behalf, I'm sorry, on behalf of the court, we thank you for representing your client pro bono. First, and if possible, I'd like to reserve three minutes of my time for rebuttal. The immigration judge in this case committed three fundamental errors, each of which requires remand. One, he failed to consider the social group that my client actually articulated. Two, he applied the wrong legal standard to his circularity analysis. And three, he failed to engage in the required case-by-case analysis of the claims, ignoring highly relevant evidence in the record without adequate explanation. I'll focus first on the most central of these errors, because it infected every element of the immigration judge's analysis, and because the court really need go no further. The IJ entirely rewrote the social group that Mr. Guerrero Rodriguez argued he belonged to and that would lead to his persecution. This court said explicitly in Rios v. Lynch that that sort of error, considering the wrong social group, requires remand, without the court going any further in assessing the petitioner's claim. Was this particular argument raised to the BIA? Your Honor, we think that this was raised to the BIA. In the BIA brief, he clearly articulated that he thought that the immigration judge had erroneously assessed the particularity and social distinction. But isn't that a different issue, counsel? Well, no, because I think that in the immigration judge's assessment of social distinction and particularity, he necessarily was assessing a specific social group, and the arguments that were raised before the BIA were about the problems with finding circularity where there is no circularity when the group is properly understood. And I think understanding the difference between the two groups really makes clear the way in which both his presentation to the BIA was calling out this error and the way in which the immigration judge actually made this mistake. And that's because the correct social group is individuals who were targeted by gangs when they were youth in El Salvador, and they resisted. So we can call that out. What was the gang that was proposed at the time of the appeal to the BIA? The gang was the 18th Street Gang. What was the social group that was proposed? The social group was El Salvadorian youth targeted by gangs, but it was clear in context from everything that my client presented, both in the entirety of the record from when he applied for asylum, through his testimony and his briefing before the IJ, and his counsel's argument that what he was talking about were individuals who, while they were youths, were targeting for recruitment, were there to be returned to El Salvador, but in the form of torture or murder that the gangs would carry out against them because they were members of this group of sort of prior target, prior resistors to gang recruitment. What makes you think that the IJ didn't fairly capture that group? The IJ's group that it considered was focused instead on potential targets of gang recruitment. So the IJ thought that the group consisted of people who could potentially be targeted for recruitment by gangs in the future, and he thought that the persecution that was feared was the same, potential targeting by gangs in the future. And that's very clear in his circularity analysis, where he says the fact that you're being targeted is the harm, and it's also what you're trying to avoid as persecution. That simply can't be said of the social group as properly understood, because when the past, when the defining characteristic of the social group is having gone through a very specific experience, here being targeted by a gang as a youth for recruitment, which is a very harrowing and terrifying experience that individuals in El Salvador do everything they can to avoid because of how terrible it is, that makes the group particularized. But when the group doesn't fear that that happens to them again, and instead fears a different type of persecution, here murder or torture that the gangs will carry out because of the membership in the prior resistors, prior target group, there's a distinction there that defeats the circularity analysis, and that brings us very close to the court's analysis in the En Bonk-Henrique S. Rivas case. Counsel, can you point us precisely in the record where the argument was made that you're making here today? Or in the record, can we find that argument made by the petitioner? Sure, the argument of his particular social group being based on the prior targeting for and his feared persecution being murder or torture, there's a number of places in the record. Well, tell me the strongest iteration of that argument. Where is that? Sure. At page 110 of the record, in a colloquy between the immigration judge and my client's counsel, the counsel made clear that when my client resisted the gang's efforts to recruit him, he created a group of those who had resisted, and that the feared harm was that they would be targeted because of their prior resistance. There's also at page 14 through 15 of the petition. Okay, so on page 110, counsel said, beginning at line 5, Your Honor, I believe that the respondent's group is socially distinct because he was specifically targeted to join the gang, and he refused, therefore creating a group in and of itself in refusing to join the gang. Correct? That's right. And so is your argument that the particular social group is individuals who were specifically targeted to join the gang and refused? That's exactly right. And why is it that you say the I.J. did not consider that? Because the I.J. parroted that language in the opinion. Well, when the I.J. talked about why there was circularity, he talked about the fact that, well, the harm is that he is being recruited, so it becomes circular. He is defining the group in terms of the persecution. The question is not whether they are targeted for the gang, but why they are targeted for the gang. And he goes on to say it's just people who are targeted or a member of the social group because they are targeted. That is the exact sort of circularity that A.B. tries to make clear is not sufficient. And he again talks about the fact that the reason they're in the group is that they were targeted for recruitment. But that's what the attorney said. That's exactly what the attorney said was the reason why the group was socially distinct. Well that is what makes the group socially distinct, but that means that the judges, to the extent that the judge accepted that the group was those who had already been targeted, then the circularity analysis that the judge went through is certainly wrong because he conflated the harm that was the shared past experience, making the group particularized, with the feared persecution in the future. And we know from a number of this court's cases, from Matter of A.B., Diaz-Reynoso, Perar-Bach, that the problem with circularity happens is when the persecution that's feared is the defining characteristic of the social group that makes it particularized. But here there's a distinction. There's the past targeting for joining the gang. That's the defining shared past characteristic that makes them particularized. And then there's the feared persecution, which is the murder or torture that they can suffer as a result of that, of belonging to that group. So that can't be circular under this court's analysis. Counsel, counsel, I don't want to interrupt the flow of your argument, but I have a question based on what you just said, that if you could help me out by addressing it. I can understand the argument that a group may be particularized if they've suffered past targeting, but how does past targeting make that group socially distinct? Because if you were walking down the street in El Salvador going through a village, how would you know which of the people you saw had been targeted? Sure, and I think this is a really important point, and it highlights the difference between the way that the BIA and this court are analyzing social distinction now from the way they analyzed it in the past cases that addressed social groups similar to the one that my client articulated. And it's that the question isn't whether a member of society would be able to on-site recognize whether or not someone was within the group. It's about social perception. So the question is really if someone said, you know, my friend was targeted by gangs as a youth and he resisted, would someone in El Salvador recognize that, oh, now that or otherwise maimed by the gangs? And there's a lot of evidence in the record that that would be the case, including the fact that the very people he was with when he was targeted for recruitment were murdered and mutilated by the gang shortly thereafter, as well as the ongoing threats that he continues to receive. So that is the social distinction analysis that in the court's prior cases was different at the time. They were calling it social visibility, and now it's social distinction to make clear that this analysis is different. If possible, I'd like to reserve the very little remainder of my time for rebuttal. Counsel, when you come back, I'd like for you to be prepared to address AR-15, where the issue for appeal was set forth by the petitioner. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, Andrew Nsinga on behalf of the Attorney General. Petitioner alternates, and his claim has morphed over time. Largely, what petitioner argues before this Court is unexhausted. The immigration judge, as Judge Rollins pointed out, Rollinson pointed out, largely parroted what petitioner's counsel proposed before the immigration judge. Now if petitioner believed that the immigration judge simply did not understand the group, petitioner was absolutely allowed to appeal to the board and say, look, the immigration judge just didn't understand my group. But as Your Honor, Judge Rollinson just pointed out, on AR-15, the issue presented was whether he established the group for which he is a member. On page 19, the group has specifically said that it's youth Salvadorans targeted for gang recruitment, not the multiple sentence group that petitioner's counsel has now proposed to this Court. And frankly, that's the first time petitioner has actually presented what the group petitioner actually thinks it should have been in any filing. Largely, petitioner has glossed over what it was, which is Salvadoran youth targeted for gang recruitment. Now the immigration judge understood the broader complexity of that. On AR-47, the immigration judge recognized that he considered this sort of broad concept within that. Now, again, if that's wrong, petitioner was free, represented by counsel, to raise that immigration to the board. What petitioner can do is come to this Court, particularly for the first time in a lot of the argument, and actually present the group that petitioner now thinks should have been presented. Ultimately, petitioner spends a large amount of time talking about particularity and circularity. But frankly, we don't even need to reach that because social distinction is dispositive. Even if petitioner were to define newly, newly define the group as someone who was targeted, and while the multiple sentence group now being proposed, the problem is petitioner doesn't point to a single bit of evidence that actually discusses that group. Petitioner's opening brief cited three documents, three, and they're all essentially the same country report that simply talked about harm to children. Nothing talked about Salvadoran youth targeted for gang recruitment. Nothing even talks about Salvadorans who were targeted as youth for gang recruitment and now fear other harm. Therefore, that was on account of, you know, we don't know what the group is. Petitioner simply doesn't want to tell us in writing what it is. The agency is not obligated to discuss what petitioner's argument meant to be. Could have presented it. Could have cited evidence. Did not. And so it bears, given in light of petitioner's emphasis, apologies, given petitioner's emphasis on circularity, what petitioner fails to even appreciate is, again, even this youthful concept wasn't defined before the agency. Now, petitioner, of course, because it's an unexhausted claim, brings up Chenery. But look, Chenery was not meant to turn this into a ping pong game because what petitioner actually testified was on AR 9, excuse me, on AR 93, the problems began in June of 2014. Petitioner was 22 years old. Is it a Salvadoran youth? Well, we don't know. Petitioner didn't testify to any of that. Petitioner's counsels, both before the immigration judge and the board, didn't elaborate on that. But again, it's just whole cloth manufactured in a reply brief for the first time in a court of appeals. Does this court's decision in Diaz-Reynoso have any bearing on this petition? Yes. Diaz-Reynoso, particularly, I suspect Your Honor is getting into circularity, but what a petitioner must delineate his or her proposed social group for the immigration judge and may not reframe the group on appeal. That's exactly what petitioner has done before this court. And in fact, that largely answers everything before the court. How about the circularity piece of it? On circularity, what this court said is circularity can't be the only, as long as it's the only concept being involved here. But again, particularity involves and has long involved, since MATTER-CA, WGR, MEVG, has long involved that you can't define a group by the harm being alleged. Now the immigration judge, again, on AR-47 and 52, recognized that there is a more complexity about particularity, about how do we know exactly is in this group? Because what Petitioner's Counsel argued on AR-110 was essentially it's anyone targeted for any reason. Well, again, that argument kind of loses sight of the point of a particular social group. We have to show a nexus to a protected ground. And what this court has repeatedly recognized in Zatino and since thereafter is that fear of crime is not a basis. So in order to avoid Zatino, people propose particular social groups. But again, when you change them over time and you can't delineate who exactly is in them and you don't even talk about evidence of social distinction on this group or even the group that you want to propose, then the agency doesn't err. And again, it doesn't err to the extent it's even before this court to discuss. So, unless the court has any further questions, respond to arrest in a brief and ask the court deny the petition. All right. Thank you, counsel. Thank you. Rebottle? Sure, Your Honor. First, to get to your question about where this circularity issue and the definition of the social group was raised in the board brief, if I could, on page 14 of the brief to the board, my client said, respondent is terrified that he testified that he was afraid for his life because gang threats from the 18th Street Gang. Again, that's about fear for his life, not fear of being recruited for the gang. He said, respondent is now seeking asylum as he fears that if returned to his country, he would be harmed or killed. Again, that's not about being fearful that he will be recruited for the gang in the future. But counsel, on page 15 is where the issue for review was stated. And so how do you get to your argument that there was a separate fear of being killed when the issue here is simply whether the IJ erred in concluding that respondent had not established past persecution or well-founded fear of persecution on account of a cognizable particular social group for which he was a member without making the nuanced argument that you're making here? Well, Your Honor, I think this more nuanced argument fits very squarely within the issue presented, which is about whether or not his feared persecution is on the basis of a cognizable social group. And all of this goes to whether or not what he's asserted is a cognizable social group. Where is that group named in this brief? The group that you're defining here today, where is that group named in this brief? He's talking about the group, the group. But the name that you are now labeling it as is not here. If it is, please point us to where that group is actually named in this brief. Your Honor, he talks about the fact that the social group shares the immutable characteristics of age, gender, and economic status, which has become the targeted group for gang violence. He was talking about, throughout his testimony, the fact that he had been targeted for violence. Everything in his testimony, from the time that he came before the first official he met in the United States, he said that what had happened to him was that he was targeted for gangs, and his fear was about being harmed or killed when he was returned. But the I.J. acknowledged that. The I.J. was not blind to that. The I.J. recited, I think, those exact facts in the decision, right? He absolutely recited those facts, but then when he turned to the circularity analysis, he treated it as though the future harm was the same as the past harm. And that is just simply not true, if you're looking at the totality of the circumstances and the totality of the submissions, as well as the actual social group as described by my client. He did not, at any point in the record, suggest that what he feared in the future was being targeted by gangs for future recruitment. And yet, that is the circularity that the immigration judge relied on. But even accepting that there is not a distinction between the two social groups, as the I.J. construed it and what my client raised, there's still a problem with this analysis here, which is that in assessing social distinction and particularity, the I.J. simply analogized to other cases, pointed to a matter of AB1, and basically treated it as though gang-related claims were categorically never going to be cognizable. He did not address evidence of social distinction. And contrary to the government's assertion, there was clear evidence of social distinction in the record. There are country reports talking about how there's large displacement of youth due to gangs. There's press reports showing coverage of gangs targeting... But, Counselor, that's not particularized to this particular petitioner. Well, country reports are submitted routinely, and of course they don't... Of course they are. Of course they are. But there has to be some indication that those country reports reflect the particular circumstances of this petitioner. Well, Your Honor, in the record, there's extensive testimony from declarations and testimony about what happened to my client and what he believes will happen to him on return. There's the press reports about what happened to his friends who he was targeted with. And so the country reports, those provide support and corroboration for his evidence. And what we know from the Supreme Court's recent decision in Ming Dai is that when an asylum seeker seeks or testifies about something, the IJ can't simply set that aside without explaining either that it was not credible, that it didn't meet the standard, or that there's some sort of contrary evidence. But here we have testimony showing exactly what meets the standard, which is that he's within the social group and that the social group is distinct because people in the society recognize him as particularly vulnerable. All right, counsel. All right, counsel. Could you wrap up? You're way over your time. So could you wrap up? Yes, thank you very much. I would just point the court to Henriquez Rivas, where this court said that when the society is aware of the fact that the gangs are likely to target members of the specific group, that can establish social distinction. And I think there was ample evidence here to get into that. But without even reaching that, this court should remand so that the IJ can explain, as the Supreme Court said in Ming Dai, that it must. And in Madrigal, that simply saying it considered the evidence is not sufficient and that remand is required. All right. Thank you, counsel. Thank you to both counsel. The case, as argued, is submitted for decision by the court. And again, we thank counsel for appearing pro bono.
judges: GOULD, RAWLINSON, BRESS